# United States Court of Appeals for the Federal Circuit

---

(Interference No. 105,606)

**SHANE C. HOLLMER AND LEE E. CLEVELAND,**
*Appellants,*

**v.**

**ELIYAHOU HARARI AND SANJAY MEHROTRA,**
*Appellees.*

---

2011-1276

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

Decided: June 7, 2012

---

DEANNE E. MAYNARD, Morrison & Foerster, LLP, of Washington, DC, argued for appellants. With her on the brief were ALEXANDER J. HADJIS and KRISTIN L. YOHANNAN; and GREGORY W. REILLY, of San Diego, California. Of counsel on the brief were MARTIN C. FLIESLER and JOSEPH P. O'MALLEY, Fliesler Meyer LLP, of San Francisco, California.

WILLIAM A. BIRDWELL, Davis Wright Tremaine, LLP, of Portland, Oregon, argued for appellees. With him on the brief were TIMOTHY R. VOLPERT and SCOTT E. WARNICK.

─────────────

Before PROST, MAYER, and O'MALLEY, *Circuit Judges*.

PROST, *Circuit Judge*.

This case is a second appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences ("Board") involving Patent Interference No. 105,606(JL) between Eliyahou Harari and Sanjay Mehrotra (collectively "Harari"), named inventors on pending U.S. Patent Application No. 09/310,880 ("'880 application"), and Shane C. Hollmer and Lee E. Cleveland (collectively "Hollmer"), named inventors on U.S. Patent No. 5,828,601 ("'601 patent"). The Board entered judgment against Hollmer after finding that Harari's '880 application was entitled to the benefit of the filing date of Harari's U.S. Patent Application No. 07/337,566 ("'566 application") and thus preceded the date of conception for Hollmer's '601 patent. Because the Board misinterpreted our previous decision in *Harari v. Hollmer*, 602 F.3d 1348 (Fed. Cir. 2010) ("*Harari I*"), in finding that continuity was maintained in the chain of priority between the '566 application and the '880 application involved in the interference, we reverse the Board's decision and remand.

## I. BACKGROUND

Harari's '880 application was filed on May 14, 1999, and is part of a chain of patent applications beginning with the '566 application, which was filed on April 13, 1989. The '880 application is a continuation of U.S. Patent Application No. 08/771,708 ("'708 application"),

which is a continuation of U.S. Patent Application No. 08/174,768 ("'768 application"), which is a continuation of U.S. Patent Application No. 07/963,838 ("'838 application"), which is a divisional of the original '566 application.[1]

The '566 application was filed on the same day as Harari's U.S. Patent Application No. 07/337,579 ("'579 application"). The following incorporation statement from the '566 application was copied into the subsequent applications in the priority chain and is at the heart of this appeal:

> Optimized erase implementations have been disclosed in two copending U.S. patent applications. They are copending U.S. patent applications, Serial No. 204,175, filed June 8, 1988, by Dr. Eliyahou Harari and *one entitled "Multi-State EEprom Read and Write Circuits and Techniques," filed on the same day as the present application*, by Sanjay Mehrotra and Dr. Eliyahou Harari. The disclosures of the two applications are hereby incorporate[d] by reference.

J.A. 1204 (emphasis added). Harari's '579 application is the above-referenced application titled "Multi-State EEprom Read and Write Circuits and Techniques" that was "filed on the same day" as the '566 application.

The '880 application included a photocopy of the '566 application, a transmittal sheet identifying the filing as a continuation application, and a preliminary amendment.

---

[1] The '838 and '768 applications ultimately issued as U.S. Patent Nos. 5,297,148 and 5,602,987, respectively.

The preliminary amendment revised the above incorporation by reference language copied from the '566 application to refer to the '579 application by both serial number and filing date and added additional material from the '579 application.

During the interference proceedings before the Board, Hollmer filed a motion arguing that Harari's involved claims were unpatentable under 35 U.S.C. § 112, first paragraph, for lack of written description. Specifically, Hollmer argued that the '579 application was not properly identified in the '880 application's original disclosure because the '579 application was not "filed on the same day" as the '880 application. As a result, Hollmer contended, the material from the '579 application in the preliminary amendment was new matter under 35 U.S.C. § 132. The Board agreed, granting Hollmer's motion and entering judgment against Harari.

On appeal in *Harari I*, we concluded that the Board had applied an incorrect standard for determining whether the '579 application was incorporated into the '880 application's original disclosure, and we articulated a narrow rule for reviewing such statements when an applicant seeks to amend an ambiguous incorporation statement at the "initial filing stage": "The proper standard by which to evaluate the sufficiency of incorporation by reference language, at this stage of the proceedings, is whether the identity of the incorporated reference is clear *to a reasonable examiner* in light of the documents presented." *Harari I*, 602 F.3d at 1352-53 (emphasis added). Applying this standard, we held that the reasonable examiner, who had the benefit of the transmittal sheet and the preliminary amendment, would understand that the copied language from the original '566 application in the '880 application referred to the '579 application. *Id.* at

1353-54. As a result, the preliminary amendment was not new matter. *Id.* We reversed and remanded to the Board for further proceedings. *Id.* at 1354.

On remand, the Board addressed Harari's motion seeking the benefit of the filing date of the '566 application for the '880 application. To resolve this motion, the Board had to determine whether the intervening '838 and '768 applications sufficiently incorporated the '579 application by reference such that 35 U.S.C. § 120's continuity requirements were satisfied. If they did, the '880 application was entitled to the benefit of the April 13, 1989 filing date of the '566 application; if they did not, the '880 application was only entitled to the benefit of the December 20, 1996 filing date of the '708 application, which undisputedly discloses the '579 application.

The intervening '838 and '768 applications contain the same incorporation language copied from the '566 application but, unlike the '880 application, were never amended to refer to the '579 application by serial number and filing date. In reviewing these intermediate applications, the Board continued to apply the *Harari I* reasonable examiner standard, finding that "[t]he determining attribute [for determining the correct standard] is the status of Harari's involved ['880 application], which has not yet issued as a patent." J.A. 17. Using this standard, the Board found that a reasonable examiner would have had access to all of the filing papers, including the transmittal sheets, for the '838 and '768 applications, and consequently would have understood that the disputed incorporation by reference language in those applications referred to the '579 application. J.A. 16-17. Accordingly, the Board determined that continuity between the '566 and '880 applications was maintained and that the '880 application was entitled to the priority date of the '566

application. The Board entered judgment against Hollmer, and Hollmer timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4).

## II. DISCUSSION

This court reviews the Board's factual findings for substantial evidence and its legal determinations de novo. *In re Constr. Equip. Co.*, 665 F.3d 1254, 1255 (Fed. Cir. 2011). An application in an interference is entitled to the filing date of an earlier-filed U.S. patent application if the earlier application "meet[s] the requirements of 35 U.S.C. § 120 and 35 U.S.C. § 112[, paragraph 1,] for the subject matter of the count." *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998) (footnotes omitted); *see also Falkner v. Inglis*, 448 F.3d 1357, 1362 (Fed. Cir. 2006).[2] "[T]o gain

---

[2] Section 120 provides for claiming the benefit of a priority date of an earlier application:

An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States . . . which is filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application . . . .

35 U.S.C. § 120 (2006). Section 112, paragraph 1, states:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

the benefit of the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112." *Zenon Envtl., Inc. v. U.S. Filter Corp.*, 506 F.3d 1370, 1378 (Fed. Cir. 2007) (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997)); *see also In re Hogan*, 559 F.2d 595, 609 (CCPA 1977) ("[T]here has to be a continuous chain of copending applications each of which satisfies the requirements of § 112 with respect to the subject matter presently claimed." (quoting *In re Schneider*, 481 F.2d 1350, 1356 (CCPA 1973))) (alteration in original). Thus, if any application in the priority chain fails to make the requisite disclosure of subject matter, the later-filed application is not entitled to the benefit of the filing date of applications preceding the break in the priority chain. *See Lockwood*, 107 F.3d at 1571-72; *Hogan*, 559 F.2d at 609 (finding that claim 15 was only entitled to a 1967 filing date where "the disclosure to support claim 15 appears in the 1953 and the 1967 applications, but not in the 1956 application"). Whether the intervening patents in a chain of priority maintain the requisite continuity of disclosure is a question of law we review de novo. *Zenon*, 506 F.3d at 1379. Here, Harari does not dispute that the intervening '838 and '768 applications must incorporate the '579 application for the '880 application to be entitled to the benefit of the filing date of the original '566 application. Whether and to what extent a patent incorporates material by reference also is a legal question we review de novo. *Harari I*, 602 F.3d at 1351.

In *Harari I*, we concluded that when an examiner is faced with an amendment clarifying ambiguous incorporation by reference language in an application that is "at

---

35 U.S.C. § 112 ¶ 1 (2006).

the initial filing stage," the reasonable examiner standard applies for determining whether a document was properly incorporated. *Id.* at 1352-53. We contrasted this standard with the standard that generally applies to reviewing such incorporation statements: "[I]f we were determining the validity of an issued patent containing the disputed incorporation by reference statement . . . we would be concerned with whether one of ordinary skill in the art could identify the information incorporated." *Id.* at 1353 n.2. Because *Harari I* did "not involve an issued patent or language that is intended to appear in an issued patent," we held that the proper inquiry focused on the reasonable examiner, not the person of ordinary skill. *Id.*

In this second appeal, we address whether this reasonable examiner standard also applies for determining if the intermediary '838 and '768 applications sufficiently incorporate the '579 application by reference such that they satisfy § 120's continuity requirements. Hollmer argues that the *Harari I* reasonable examiner standard is limited to situations in which an applicant seeks to clarify an ambiguous incorporation statement through an amendment that triggers a potential 35 U.S.C. § 132 new matter problem. Where, as here, § 120 priority is at issue, Hollmer contends that the incorporation by reference inquiry takes place within the § 120 context, applying the person of ordinary skill standard.

Harari, on the other hand, argues that, under *Harari I*, these intervening applications necessarily incorporate the '579 application by reference because the disputed incorporation language in the '838 and '768 applications is identical to the language in the '880 application deemed sufficient in *Harari I*. If the issue does remain open after *Harari I*, moreover, Harari maintains that the incorporation statement is sufficient under the reasonable exam-

iner standard. According to Harari, *Harari I* set forth the standard for identifying an incorporated document during examination before the U.S. Patent and Trademark Office ("PTO")—the reasonable examiner standard—and that standard is distinct from the one for identifying the substantive material incorporated from that document— the person of ordinary skill standard. Because here the incorporation issue involves document identification, Harari asserts that the Board correctly applied the reasonable examiner standard in finding that the '838 and '768 applications adequately identify the '579 application.[3] Although we appreciate the Board's difficulty in determining how far to extend our holding in *Harari I* given the opinion's silence on this particular issue, we agree with Hollmer that the Board should have applied the person of ordinary skill standard in assessing the disputed language in the '838 and '768 applications.

First, we are not persuaded by Harari's argument that *Harari I* resolved this incorporation question. *Harari I* dealt specifically with the language of the '880 application viewed in light of the preliminary amendment and accompanying transmittal sheet; it did not consider the intervening '838 and '768 applications—which never

---

[3] Alternatively, Harari argues that Hollmer waived any arguments with respect to *Harari I*'s application to this priority issue because Hollmer never presented these arguments to the Board on remand. We disagree. The Board sua sponte applied *Harari I* in ruling on Harari's priority motion without asking for briefing or comment on that point. Where the Board applies a legal standard that governs its holding, the propriety of that standard is properly before us on appeal. *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) ("Our practice 'permit[s] review of an issue not pressed [by a party] so long as it has been passed upon [by the court below].'") (citation omitted) (first alteration in original).

were amended—in the context of the § 120 priority analysis.

Second, with respect to the appropriate standard for assessing the incorporation statements, we disagree with Harari that the *Harari I* reasonable examiner standard applies whenever the identity of an incorporated document is at issue before the PTO. Questions surrounding incorporation by reference statements do not arise in isolation but instead generally manifest as an initial hurdle that first must be crossed before reaching an underlying issue. It is this underlying issue that provides the framework for resolving the incorporation by reference question. For example, when the ultimate question implicates the understanding of a person of ordinary skill, such as determining whether the written description requirement is satisfied, construing claims, or evaluating the teachings of a prior art reference, we have reviewed the incorporation statements from the person of ordinary skill vantage point. *See Harari v. Lee*, 656 F.3d 1331, 1334 (Fed. Cir. 2011) ("[T]he standard is whether one reasonably skilled in the art would understand the application as describing with sufficient particularity the material to be incorporated."); *Zenon*, 506 F.3d at 1378-79 (same); *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1376 (Fed. Cir. 2006) (same); *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1283 (Fed. Cir. 2000) (same). In assessing incorporation statements from this point of view, our cases have required that "the host document . . . identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents." *Zenon*, 506 F.3d at 1378 (quoting *Cook Biotech*, 460 F.3d at 1376).

In *Harari I*, we identified a narrow circumstance warranting the application of the reasonable examiner standard, but we did not alter these traditional rules governing the incorporation by reference inquiry. Specifically, *Harari I*'s modified standard applies when an application is at the initial filing stage and the examiner is evaluating an amendment that clarifies ambiguous incorporation by reference language. Our predecessor court applied an analogous standard under similar circumstances in *In re Fouche*, 439 F.2d 1237, 1239-40 (CCPA 1971).

Here, unlike *Harari I* or *Fouche*, we are not considering an amendment seeking to clarify the incorporation statements in the '838 and '768 applications. Instead, the issue before us is whether these intervening applications maintain continuity between the '566 and '880 applications by disclosing the '579 application. The continuity inquiry provides the backdrop for the incorporation by reference analysis. In *Zenon*, where incorporation also was at issue, we explained that the continuity inquiry is undertaken using the "reasonable person of ordinary skill in the art standard":

> [T]he sole question before the district court was whether the intervening patents maintained the continuity of disclosure by incorporating by reference the gas distribution system disclosed in the '373 patent, entitling the '319 patent to an earlier filing date. In this respect, the court was required to determine that question of law, which we review *de novo*, using the reasonable person of ordinary skill in the art standard.

*Zenon*, 506 F.3d at 1379. Although *Zenon* involved district court litigation rather than a PTO interference

proceeding, we similarly have applied the person of ordinary skill standard in interferences when assessing priority under § 120, *see Falkner v. Inglis*, 448 F.3d 1357, 1365 (Fed. Cir. 2006), and see no reason to depart from that standard here.   Moreover, § 120 requires that the disclosure actually appear within the specification, *Lockwood*, 107 F.3d at 1571-72 ("It is the disclosures of the applications that count.   Entitlement to a filing date does not extend to subject matter which is not disclosed, but would be obvious over what is expressly disclosed."), and amendments in later applications cannot cure an otherwise defective application in the priority chain, *see Encyc. Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 609 F.3d 1345, 1351 (Fed. Cir. 2010) (holding that "[l]later applications cannot amend [an] application and restore its entitlement to priority").   The incorporation by reference analysis, therefore, is similarly constrained by the four corners of the application.

Applying the correct standard, we conclude that the disputed language in the '838 and '768 applications does not "identify with detailed particularity what specific material it incorporates" to a person of ordinary skill. *Zenon*, 506 F.3d at 1378.   Unlike the '566 application, neither the '838 application nor the '768 application was "filed on the same day" as, or "copending" with, the '579 application.   At least two other applications by named inventors Mehrotra and Harari, however, were "copending" with the '838 application and had the same title as the '579 application: U.S. Patent Application Nos. 07/508,273 and 07/734,221.   J.A. 297.   Thus, on its face, the incorporation language does not directly lead one of ordinary skill to the '579 application but rather presents several potential documents for incorporation.   Such ambiguity in incorporation does not suffice.   As we have previously cautioned, "[P]atent draftsmanship is an

exacting art, and no less care is required in drafting an incorporation by reference statement than in any other aspect of a patent application." *Zenon*, 506 F.3d at 1382 n.3. Without the incorporation of the '579 application in the '838 and '768 applications, the '880 application is not entitled to the benefit of the priority date of the '566 application.

## III. CONCLUSION

We have considered Harari's additional arguments and conclude that they similarly lack merit. For the above reasons, we reverse the Board's decision and remand for the Board to enter judgment that the effective filing date of the '880 application is December 20, 1996—the filing date of the '708 application—and for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**