# United States Court of Appeals for the Federal Circuit

---

**DROPLETS, INC.,**
*Appellant*

**v.**

**E\*TRADE BANK, E\*TRADE FINANCIAL CORPORATION, E\*TRADE SECURITIES, LLC, SCOTTRADE FINANCIAL SERVICES, INC., SCOTTRADE, INC., TD AMERITRADE HOLDING CORP., TD AMERITRADE, INC.,**
*Cross-Appellants*

**v.**

**ANDREI IANCU, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2016-2504, 2016-2602

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2015-00470.

---

Decided: April 19, 2018

---

DANIEL LUKE GEYSER, Stris & Maher LLP, Los Angeles, CA, argued for appellant. Also represented by DOUGLAS D. GEYSER; TIMOTHY BECHEN, Bechen PLLC, Richmond, VA.

MICHAEL T. ROSATO, Wilson, Sonsini, Goodrich & Rosati, PC, Seattle, WA, argued for cross-appellants. Also represented by ANDREW SWANSON BROWN; MATTHEW A. ARGENTI, MICHAEL BRETT LEVIN, Palo Alto, CA; JOEL CHRISTIAN BOEHM, Austin, TX; RICHARD TORCZON, Washington, DC.

SARAH E. CRAVEN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for intervenor. Also represented by NATHAN K. KELLEY, THOMAS W. KRAUSE, PHILIP J. WARRICK.

————————————

Before DYK, O'MALLEY, and WALLACH, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

E*TRADE Bank, E*TRADE Financial Corporation, E*TRADE Securities, LLC, Scottrade Financial Services, Inc., Scottrade, Inc., TD Ameritrade Holding Corp., and TD Ameritrade, Inc. (collectively, "E*TRADE") filed a petition for inter partes review ("IPR") of U.S. Patent No. 8,402,115 ("the '115 Patent"), owned by Droplets, Inc. ("Droplets"). The Patent Trial and Appeal Board ("the Board") instituted review and issued a final written decision finding all claims of the '115 Patent invalid as obvious under 35 U.S.C. § 103. *E*TRADE Fin. Corp. v. Droplets, Inc.*, No. IPR2015-00470, 2016 WL 3476939 (P.T.A.B. June 23, 2016) ("*Board Decision*"). In reaching this conclusion, the Board found that: (1) the '115 Patent failed to enumerate a priority claim sufficient to avoid fully-invalidating prior art; and (2) incorporation by reference is insufficient to satisfy a patentee's burden of providing notice of the asserted priority date under 35

U.S.C. § 120.  Droplets appealed, and the Director of the U.S. Patent and Trademark Office intervened to defend the Board's decision on the priority date issue.  E\*TRADE filed what it characterizes as a conditional cross-appeal, arguing that, if we disagree with the Board regarding the priority issue, there is an alternative ground to determine that at least some of the '115 Patent claims are invalid.

By statute, a claim for benefit of the filing date of an earlier application must include "a specific reference to [an] earlier filed application."  35 U.S.C. § 120.  We agree with the Board that incorporation by reference cannot satisfy this statutory requirement.  Because the '115 Patent expressly claims priority only to an immediately preceding application, and not the provisional application before that, the Board correctly determined that an earlier-filed reference—an international publication with the same specification—invalidated all claims of the '115 Patent.  We therefore affirm the Board's decision finding all claims of the '115 Patent invalid as obvious.  We dismiss E\*TRADE's cross-appeal as improper.

## I. BACKGROUND

### A.  The '115 Patent

The '115 Patent relates to a method and system "for delivering interactive links for presenting applications and second information at a client computer from remote sources in a network-configured computer processing system."  '115 Patent at Abstract.  In this appeal, the parties dispute the effective filing date of the '115 Patent.  As depicted below, the '115 Patent was filed on January 26, 2009, and was the last of four patents filed in its lineage:

| | 9-14-99 | 6-22-00 | 9-14-00 | 3-22-01 | 11-24-03 | 2-3-04 | 1-26-09 | 3-10-09 | 3-19-13 |
|---|---|---|---|---|---|---|---|---|---|
| 917 provisional | ███ | ███ | | | | | | | |
| 745 patent | | ███ | ███ | ███ | | | | | |
| Franco PCT | | | ███ | | | | | | |
| 838 patent | | | | | ███ | ███ | ███ | | |
| 115 patent | | | | | | | ███ | ███ | |

*Board Decision*, 2016 WL 3476939, at *5. The other applications relate as follows:

- the '115 Patent was copending with the application leading to U.S. Patent No. 7,502,838 ("the '838 Patent"), filed on November 24, 2003;

- the '838 Patent was copending with the application leading to U.S. Patent No. 6,687,745 ("the '745 Patent"), filed on June 22, 2000;

- the '745 Patent was copending with the earliest-filed application, Provisional Application No. 60/153,917 ("the '917 Provisional"), filed on September 14, 1999; and

- a Patent Cooperation Treaty ("PCT") application ("the Franco PCT") was filed on September 14, 2000, and published on March 22, 2001.

The specification of the '115 Patent includes a priority claim that specifically refers to the '838 Patent and incorporates its disclosure by reference. '115 Patent, col. 1, ll. 5-12. The '115 Patent specification also includes a cross reference to the '917 Provisional. These sections read as follows:

CLAIM OF PRIORITY

The present application is a continuation of allowed U.S. patent application Ser. No. 10/720,728, entitled "SYSTEM AND METHOD FOR DELIVERING REMOTELY STORED APPLICATIONS AND INFORMATION" filed on Nov. 24, 2003 now U.S. Pat. No. 7,502,838, the di[s]closure of which is hereby incorporated by reference in its

entirety.

CROSS REFERENCE TO RELATED DOCUMENTS

Priority is herewith claimed under 35 U.S.C. § 119(e) from copending Provisional Patent Application No. 60/153,917, filed Sep. 14, 1999, entitled "METHOD AND SYSTEM FOR DELIVERING APPLICATIONS IN CLIENT/SERVER ENVIRONMENT," by Louis M. Franco et al.  The disclosure of this Provisional Patent Application is incorporated by reference herein in its entirety.

'115 Patent, col. 1, ll. 5-24.

It is undisputed that the '115 Patent properly claims priority from the earlier-filed, copending '838 Patent and thus is entitled to the benefit of the November 24, 2003 filing date of the '838 Patent. *Board Decision*, 2016 WL 3476939, at *6.  The '838 Patent specification identifies the patent as a "[c]ontinuation of application No. 09/599,382, filed on Jun. 22, 2000, now Pat. No. 6,687,745," and expressly claims priority from the '917 Provisional, which was filed on September 14, 1999. '838 Patent, col. 1, ll. 5-18.  As such, the parties agree that the '838 patent is entitled to the benefit of the September 14, 1999, filing date of the '917 provisional, because it: (1) was copending with the '745 patent; and (2) "contains the specific references to the '745 patent and '917 provisional required under 35 U.S.C. § 120 and 37 C.F.R. § 1.78." *Board Decision*, 2016 WL 3476939, at *6.  The question on appeal is whether the '115 Patent is also entitled to the '917 Provisional's priority date by virtue of the language in the '115 Patent that incorporates the '838 Patent by reference.

As noted, the application leading to the '115 Patent was filed on January 26, 2009.  The applicant subsequently filed a preliminary amendment that added a reference claiming priority from the application that led to the '838

Patent. That priority claim statement listed only the 2003 application: "The present application is a continuation of allowed U.S. Patent Application Serial No. 10/720,728 . . . filed on November 24, 2003, the disclosure of which is hereby incorporated by reference in its entirety." Joint Appendix ("J.A.") 3484. During prosecution, two documents (a filing receipt and a bibliographic information sheet from the PTO) initially reflected a priority claim not only to the '838 Patent, but also to the '745 Patent and the '917 Provisional. Prior to issuance, however, the PTO mailed a corrected filing receipt for the application that became the '115 Patent, dated July 19, 2012, which listed the priority claim solely to the '838 Patent. That document clarified the claimed priority date as follows: "This application is a CON of 10/720,728 11/24/2003 PAT 7502838." J.A. 3298. Although the applicant filed a subsequent amendment to correct a typographical error in the claims, it did not amend the priority claim. The '115 Patent issued on March 19, 2013.

## B. Procedural History

In May 2011, while the application for the '115 Patent was pending, Droplets filed suit against E*TRADE in the United States District Court for the Southern District of New York, alleging infringement of the '838 and '745 patents. After the '115 Patent issued in 2013, Droplets amended its complaint to add that patent to the suit.

In December 2014, E*TRADE filed a petition for IPR challenging claims 1-25 of the '115 Patent. E*TRADE asserted that the '115 Patent claims priority only to the '838 Patent and thus is entitled to a priority date of November 24, 2003. Based on that priority date, E*TRADE relied on the related Franco PCT—published in March 2001—as prior art, and the Board instituted review. In its patent owner response, Droplets argued that the '115 Patent is entitled to the filing date of the '917 Provisional (September 1999) because the '115 Pa-

tent's priority claim incorporates the '838 Patent by reference. According to Droplets, because the '838 Patent claims priority from the earlier-filed '745 Patent and the '917 Provisional, the '115 Patent is entitled to the '838 Patent's priority claim, which antedated the Franco PCT reference.

The Board issued its final written decision on June 23, 2016. At the outset, the Board found that the '115 Patent is not entitled to the benefit of the September 14, 1999 filing date of the '917 Provisional. In reaching this conclusion, the Board found that: (1) the '115 Patent's incorporation by reference of the '838 Patent failed to qualify as a "specific reference" to either the '745 Patent or the '917 Provisional; and (2) a priority claim cannot be incorporated by reference under 37 C.F.R. § 1.57. *Board Decision*, 2016 WL 3476939, at *7-9.

The Board determined that the effective filing date of the '115 Patent is November 24, 2003, and that the Franco PCT, published in March 2001, qualifies as prior art. After a thorough analysis, the Board found claims 1-25 of the '115 Patent invalid as obvious over the Franco PCT and Moshfeghi, U.S. Patent No. 6,076,166. *Id.* at *20. The Board also invalidated claims 1, 7, 9, 10, 12, 18, 20, 21, and 25 on other grounds. *Id.* at *20-30. Droplets does not challenge those determinations on appeal.

Droplets timely appealed the Board's final written decision—specifically its decision that the '115 Patent failed to properly claim priority from the earlier provisional application. We have jurisdiction over Droplets' appeal pursuant to 28 U.S.C. § 1295(a)(4)(A) (2012) and 35 U.S.C. § 141(c) (2012).

E*TRADE timely cross-appealed, arguing that, if we disagree on the priority date issue, we can affirm the Board's invalidity decision as to some of the claims on alternative grounds. As discussed below, we lack jurisdiction to consider E*TRADE's cross-appeal, which, in any

event, is rendered moot in light of our decision in the main appeal.

## II. DROPLETS' APPEAL

On appeal, Droplets argues that the Board erred in holding that "Droplets failed on a technicality: it 'incorporated by reference' a critical link in the priority chain instead of mechanically reproducing the same exact words in the patent itself." Appellant Br. 8. According to Droplets, the Board incorrectly concluded that a priority claim falls outside the scope of material that can be incorporated by reference. Droplets also argues that inter partes review is invalid on two grounds: (1) non-Article III judges cannot revoke a patent without violating the Seventh Amendment; and (2) the Director cannot lawfully delegate authority to institute IPR proceedings to the Board.

E*TRADE responds that the Board correctly found that incorporation by reference is not sufficient to meet the "specific reference" requirement in establishing priority. E*TRADE also argues that this court's case law interprets 35 U.S.C. § 120 strictly, and that the governing regulations and the Manual of Patent Examining Procedure ("MPEP") allow incorporation by reference only for limited purposes.

The Director intervened and defends the Board's priority decision on grounds that: (1) under § 120, a patent must contain a "specific reference" to a previously filed application to be entitled to that application's earlier filing date; (2) incorporation by reference cannot satisfy the specific reference requirement for claiming priority; and (3) this court has already considered and rejected Droplets' constitutional and administrative law challenges to IPR procedures. For the reasons explained below, we agree with the Director on each point.

## A.  A "Specific Reference" is Required to Claim Priority

"Determination of a patent's priority date is purely a question of law if the facts underlying that determination are undisputed." *Medtronic CoreValve, LLC v. Edwards Lifesciences Corp.*, 741 F.3d 1359, 1363 (Fed. Cir. 2014). We review "the Board's conclusions on questions of law without deference." *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265 (Fed. Cir. 2002).

Priority claims are governed by statute.  To claim the benefit of an earlier filing date in the United States, § 120 provides:

> An application for patent for an invention [1] disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States, . . . [2] which is filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, [3] if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and [4] if it contains or is amended to contain a specific reference to the earlier filed application.

35 U.S.C. § 120 (numbering added).[1]

Relevant to this appeal, the statute requires that the patent application "contain a specific reference to the earlier filed application" to which it purports to claim

---

[1]    Unless otherwise stated, citations to all statutes, regulations, and rules are to the versions in effect as of January 26, 2009, the filing date of the '115 Patent.

priority. *Id.* For the specific reference to have effect, the statute provides that the application must be copending with the first-filed application or a later-filed application "similarly entitled" to the benefit of the first application's filing date. *Id.*

Section 119(e)(1) recites parallel requirements to claim priority from an earlier-filed U.S. provisional application. 35 U.S.C. § 119(e)(1). That provision similarly states that "[n]o application shall be entitled to the benefit of an earlier filed provisional application . . . unless an amendment containing the specific reference to the earlier filed provisional application is submitted at such time during the pendency of the application as required by the Director." *Id.*

The PTO has issued a regulation implementing these statutes—37 C.F.R. § 1.78—which requires that an application contain a specific reference to each prior-filed application to which the application seeks to claim priority. Specifically, regulation 1.78 provides that the application claiming the benefit of one or more prior-filed copending nonprovisional applications must include "a reference to each such prior-filed application, identifying it by application number (consisting of the series code and serial number)" and indicating "the relationship of the applications (i.e., whether the later-filed application is a continuation, divisional, or continuation-in-part of the prior-filed nonprovisional application or international application)." 37 C.F.R. § 1.78(d)(3) (2009).[2]

The regulation thus requires that the specific reference include each prior-filed application's: (1) application number; and (2) familial relationship. It further states

---

[2]    Although the Board and the parties cite 37 C.F.R. § 1.78(a)(2)(i), this language appears in § 1.78(d)(3) in the version in effect as of January 2009.

that the reference "must be included in an application data sheet . . . , or the specification must contain or be amended to contain such reference in the first sentence(s) following the title." *Id*.

Consistent with 35 U.S.C. § 120 and 37 C.F.R. § 1.78, the MPEP provides detailed guidance on how to claim priority from multiple prior-filed applications. It states that "[t]he reference to the prior applications must identify all of the prior applications and indicate the relationship (i.e., continuation, divisional, or continuation-in-part) between each nonprovisional application in order to establish copendency throughout the entire chain of prior applications." MPEP § 201.11 III.C.[3]

Before the Board, Droplets and E*TRADE agreed that the '115 Patent properly claimed priority under § 120 and regulation 1.78 to the earlier-filed, copending '838 Patent. *Board Decision*, 2016 WL 3476939, at *6. They also agreed that the '917 Provisional was not copending with the '115 Patent, as is required for a priority claim under § 119(e)(1). *Id*. And the parties agreed that the '838 Patent's specification contains a proper priority claim from the '745 Patent and the '917 Provisional. *Id*. The parties disputed, however, whether the '115 Patent's incorporation by reference of the '838 Patent was sufficient to entitle it to the '838 Patent's priority claim from the '745 Patent and '917 Provisional. *Id*. The Board found that it was not.

The Board correctly applied § 120 in finding that the '115 Patent claims priority only to the '838 Patent. The

---

[3] The MPEP also provides an example of a priority claim: "[T]his application is a continuation of Application No. C, filed ---, which is a continuation of Application No. B, filed ---, which claims the benefit of provisional Application No. A, filed ---." *Id*.

'115 Patent refers to the '838 Patent by its application number and indicates the relationship of the applications: the '115 Patent is a continuation of the '838 Patent. '115 Patent, col. 1, ll. 5-12. The '115 Patent does not contain a specific reference to either the intervening '745 Patent or the first-filed '917 Provisional. Because the '115 Patent contains the statutorily-required specific reference under § 120 and regulation 1.78 to the '838 Patent, the Board correctly concluded that the '115 Patent's effective filing date is November 24, 2003, the filing date of the '838 Patent. *Board Decision*, 2016 WL 3476939, at \*12.

On appeal, Droplets argues that the Board invalidated its patent due to a "hypertechnical violation" and that this court has shown leniency where a "failure is only technical in nature and the public has received sufficient notice." Appellant Br. 25. We disagree.

"Although § 120 might appear to be a technical provision," courts have long-recognized that "it embodies an important public policy," and thus have required strict adherence to its requirements. *Sampson v. Ampex Corp.*, 463 F.2d 1042, 1045 (2d Cir. 1972) (finding that the appellant could not claim the benefit of the 1961 filing date because the 1964 application did not contain a reference to it, "to say nothing of the 'specific reference' to serial number, and filing date, and a statement of the relationship between the two applications"); *see Hovlid v. Asari*, 305 F.2d 747, 751-52 (9th Cir. 1962) ("Having failed to state the serial number, filing date and the relationship of the second patent to the abandoned application, there seems to be a complete failure to comply with Rule 78 and Section 120, and consequently, a waiver of the benefits afforded by the latter section."). As the Second Circuit explained in *Sampson*, the information that must be disclosed is information that would "enable a person searching the records of the Patent Office to determine with a minimum of effort the exact filing date upon which a patent applicant is relying to support the validity of his

application or the validity of a patent issued on the basis of one of a series of applications." 463 F.2d at 1045.

Likewise, the Seventh Circuit has recognized that "Congress may well have thought that Section 120 was necessary to eliminate the burden on the public to engage in long and expensive search of previous applications in order to determine the filing date of a later patent." *Sticker Indus. Supply Corp. v. Blaw-Knox Co.*, 405 F.2d 90, 93 (7th Cir. 1968). Because the "inventor is the person best suited to understand the relation of his applications," it is "no hardship to require him to disclose this information." *Id.*

More recently, our court clarified that the "specific reference" requirement in § 120 "mandates each [intermediate] application in the chain of priority to refer to the prior applications." *Medtronic*, 741 F.3d at 1363 (quoting *Encyclopaedia Britannica, Inc. v. Alpine Electronics of Am., Inc.*, 609 F.3d 1345, 1352 (Fed. Cir. 2010)). In *Medtronic*, we held that, because two intermediate applications failed to specifically reference the earlier-filed applications in the priority chain, the later-filed, asserted patent was not entitled to the filing date of the first-filed application. *Id.* at 1363-64.

Medtronic argued that "the test for determining whether a priority claim contains the specific reference required by § 120 is whether a reasonable person reading the language of the claim would be able to determine the relationship between the priority applications." *Id.* at 1365. We rejected this so-called "reasonable person" test on grounds that it "runs afoul" of both § 120 and regulation 1.78, which require a specific reference to each prior-filed application in precise detail. *Id.* at 1366. Citing *Sticker* and *Sampson*, we explained that it would be improper to place the burden on the public to unearth and decipher a priority claim when the "patentee is the person best suited to understand the genealogy and relationship

of her applications," and a "requirement for her to clearly disclose this information should present no hardship." *Id.*

That the '115 Patent fails to enumerate a priority claim sufficient to avoid Droplets' own fully-invalidating prior art is not a "hypertechnicality" that unfairly rendered the claims unpatentable. Section 120 places the burden on the patent owner to provide a clear, unbroken chain of priority. *Medtronic*, 741 F.3d at 1366. As the Board explained, moreover, the "burden was on [Droplets] to read and understand the applicable patent laws and rules." *Board Decision*, 2016 WL 3476939, at *11 (citing *Medtronic*, 741 F.3d at 1366).

The record reveals that Droplets had notice of the '115 Patent's limited priority claim prior to its issuance. Although Droplets submits that the PTO sent three filing receipts with its desired priority date, it sent a corrected filing receipt in July 2012 that set forth a priority claim solely to the '838 Patent.[4]  The '115 Patent issued in March 2013, eight months later. During that eight-month window, Droplets submitted an amendment making certain changes to the '115 Patent application, as well as a request for continued examination and withdrawal of notice of allowance, but did not seek to amend the priority date. As the Board found, because the burden was on Droplets to read and understand the applicable laws, and the MPEP provided clear guidance as to how to claim the benefit of a prior-filed application, Droplets cannot claim any error on the part of the examiner. *Id.*

Because the '115 Patent contains the required specific reference only to the '838 Patent, the Board correctly

---

[4]    The Director explains that the three filing receipts appear to be duplicates mailed to three different addresses, with the first two returned to the PTO as undeliverable.  Intervenor Br. 18 n.4.

concluded that the '115 Patent's earliest effective filing date is November 24, 2003, the filing date of the '838 Patent. *Board Decision*, 2016 WL 3476939, at *12.

### B. Incorporation by Reference Cannot Satisfy the "Specific Reference" Requirement of § 120

Droplets' primary argument—both to the Board and on appeal—is that it satisfied the specific reference requirement of § 120 when it incorporated the '838 Patent by reference into the '115 Patent. Incorporation by reference "provides a method for integrating material from various documents into a host document . . . by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein." *Zenon Envtl., Inc. v. U.S. Filter Corp.*, 506 F.3d 1370, 1378 (Fed. Cir. 2007) (quoting *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1376 (Fed. Cir. 2006)). "To incorporate material by reference, the host document must identify with *detailed particularity* what specific material it incorporates and *clearly indicate where* that material is found in the various documents." *Id.* (quoting *Cook Biotech*, 460 F.3d at 1376). Whether and to what extent a patent incorporates material by reference is a question of law we review de novo. *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1283 (Fed. Cir. 2000).

Here, Droplets maintains that it stated the full priority claim for § 120 purposes via incorporation by reference pursuant to 37 C.F.R. § 1.57. That regulation provides that a claim for the benefit of a prior-filed application under 37 C.F.R. § 1.78 "shall also be considered an incorporation by reference of the prior-filed application as to [any] inadvertently omitted portion of the specification or drawing(s)." 37 C.F.R. § 1.57(a). By its terms, however, 37 C.F.R. § 1.57 requires a proper claim under regulation 1.78 as a prerequisite; it allows a later application, which enumerates a valid priority claim from an earlier

application consistent with regulation 1.78, to cure any inadvertently omitted portion of the specification or drawing(s). *Id.* Regulation 1.57(b) provides that an incorporation by reference must include the root words "incorporate" and "reference" and must "[c]learly identify the referenced patent, application, or publication." Two categories of material may be incorporated by reference into an application: "[e]ssential material" and "[o]ther material ('[n]onessential material')." 37 C.F.R. § 1.57(c)-(d).

"Essential material" can be incorporated by reference, but only by way of a U.S. patent or U.S. patent application publication which "does not itself incorporate such essential material by reference." 37 C.F.R. § 1.57(c). "Essential material" is defined as material "that is necessary to:" (1) provide a written description of the claimed invention as required by the first paragraph of 35 U.S.C. § 112; (2) describe the claimed invention as required by the second paragraph of § 112; or (3) describe the structure, material, or acts that correspond to a claimed means or step for performing a specified function as required by the sixth paragraph of § 112. *Id.* Accordingly, "essential material" is expressly defined as material necessary to meet the requirements of § 112.

Other "Nonessential material," by contrast, may be incorporated by reference to "U.S. patents, U.S. patent application publications, foreign patents, foreign published applications, prior and concurrently filed commonly owned U.S. applications, or non-patent publications." 37 C.F.R. § 1.57(d). Regulation 1.57(d) does not define "nonessential material" explicitly. The MPEP defines "nonessential material" as "subject matter referred to for purposes of indicating the background of the invention or illustrating the state of the art." MPEP § 608.01(p) I.A. The MPEP also explains that claim amendments during prosecution can transform nonessential material into essential material, triggering a § 112 rejection if the

incorporation fails to satisfy § 1.57(c).  MPEP § 608.01(p) I.A.2 (Example 2).

Taken together, 37 C.F.R. §§ 1.57(c) and (d) define information—essential and other (nonessential) material, respectively—that can be incorporated by reference into an application.  While 37 C.F.R. § 1.57(c) provides that limited materials may be incorporated solely for purposes of satisfying § 112, 37 C.F.R. § 1.57(d) provides that a broader set of materials may be incorporated for purposes of providing background of the invention or illustrating the state of the art.[5]

Droplets does not contend that a priority claim qualifies as "essential material."  Instead, it asserts that a priority claim must be "nonessential material" because essential and nonessential material are "mutually exclusive categories that cover 100% of the universe of potential material" that can be incorporated by reference.  Appellant Br. 8.  But nothing in regulation 1.57 authorizes making a priority claim under § 120 through an incorporated reference.  Indeed, there is no reference to § 120 in 37 C.F.R. § 1.57.[6]  Instead, the focus of the incorpora-

---

[5]  At oral argument, counsel for the Director explained that the incorporation by reference regulation "specifically allows § 112 material as essential material that can be incorporated by reference.  There is no other statutory requirement that then is listed.  Nonessential material . . . naturally is the complement of essential material and it's been in the MPEP since the 1960s to be state of the art, background of the invention, things that complement, that are nonessential but complement essential material."  *See* Oral Arg. at 13:45-14:15, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2016-2504.mp3.

tion by reference procedure set forth in § 1.57 is to help a patent applicant satisfy the requirements of 35 U.S.C. § 112 under 37 C.F.R. § 1.57(c), and to provide background for the invention or to illustrate the state of the art under 37 C.F.R. § 1.57(d).

Consistent with this interpretation, MPEP § 608.01(p) describes essential and nonessential material as two categories that together serve to fulfill the invention disclosure requirements of § 112. It explains that "[a]n application as filed must be complete in itself in order to comply with 35 U.S.C. § 112. Material nevertheless may be incorporated by reference." MPEP § 608.01(p). In other words, essential and nonessential material cover 100% of the universe of potential material that can be incorporated by reference to satisfy the applicant's obligation to disclose the invention under § 112. But a recitation of priority is not part of the "written description of the invention" described in § 112. Instead, a priority

---

[6] At the same time the PTO enacted 37 C.F.R. § 1.57, it amended 37 C.F.R. § 1.78 to permit the "required reference to the prior application(s) to be in multiple sentences, forming a continuous string, at the beginning of the specification, rather than being limited to the first sentence of the specification." Changes to Support Implementation of the United States Patent and Trademark Office 21st Century Strategic Plan, 69 Fed. Reg. 56,482, 56,508 (Sept. 21, 2004). The PTO noted that, "[i]n some situations, it would be easier and clearer to set forth the relationship between prior applications if more than one sentence were permitted." *Id*. As the Director points out, this amendment suggests that the PTO "never contemplated that its new incorporation-by-reference regulation could substitute for the specific-reference sentences under the newly amended § 1.78." Intervenor Br. 23-24.

claim appears in its own separate section of the specification and provides information distinct from sections describing "the invention." 37 C.F.R. § 1.77(b). The words of a priority claim are thus separate from the materials necessary to satisfy § 112. Accordingly, while 37 C.F.R. § 1.57 authorizes an applicant to incorporate by reference essential and nonessential material to satisfy § 112, nothing contained therein permits incorporating a priority claim by reference.

Droplets argues that, if incorporation by reference is adequate for § 112 purposes, it should also be adequate for § 120. Droplets cites two cases in support of this proposition: *Harari v. Hollmer*, 602 F.3d 1348 (Fed. Cir. 2010) ("*Harari I*") and *Hollmer v. Harari*, 681 F.3d 1351 (Fed. Cir. 2012) ("*Harari II*"). Neither case supports Droplets' position, however. *Harari I* did not interpret § 120, and instead focused on the sufficiency of the incorporation by reference language at issue. 602 F.3d at 1352-53. In *Harari II*, we addressed § 120's continuity requirement, noting that, "if any application in the priority chain fails to make the requisite disclosure of subject matter, the later-filed application is not entitled to the benefit of the filing date of applications preceding the break in the priority chain." 681 F.3d at 1355. The question was whether statements in two intervening applications sufficiently incorporated by reference a prior application without identifying the serial number and filing date. *Id*. at 1354-56. Because the incorporation language was ambiguous, and did not "identify with detailed particularity what specific material it incorporate[d]" to a person of ordinary skill, we concluded that the application was not entitled to claim the benefit of the filing date of the earlier application. *Id*. at 1358 (quoting *Zenon Envtl.*, 506 F.3d at 1378). Accordingly, neither case supports Droplets' suggestion that a priority claim under § 120 can be incorporated by reference.

We conclude that § 120's "specific reference" requirement does not contemplate incorporation by reference. In reaching this conclusion, we note that Droplets' proposed reading of § 120 conflicts with the statute's purpose, which is to provide clear notice to the public of the patentee's claimed priority date. *See Medtronic*, 741 F.3d at 1366. To require the public to search for an unstated priority claim through incorporated materials would create uncertainty and would require the type of guesswork that the statute is meant to avoid. *Id*. Accordingly, Droplets cannot invoke incorporation by reference to rewrite the priority claim statement in the '115 Patent.

## C. Droplets' Other Arguments

Finally, Droplets argues that IPR proceedings are invalid because: (1) they allow third parties to litigate the validity of issued patents before Article I judges in violation of Article III and the Seventh Amendment; and (2) the Director cannot delegate the institution decision to the Board because 35 U.S.C. § 314(b) (2012) provides that the "Director shall determine whether to institute an inter partes review under this chapter."

Droplets acknowledges, as it must, that this court has already considered these arguments and rejected them. *See MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1292 (Fed. Cir. 2015) ("Governing Supreme Court and Federal Circuit authority require rejection of MCM's argument that inter partes review violates Article III."), *cert denied*, 137 S. Ct. 292 (2016); *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 812 F.3d 1023, 1033 (Fed. Cir. 2016) ("[T]he Director had authority to delegate the institution decision to the Board. There is nothing in the Constitution or the statute that precludes the same Board panel from making the decision to institute and then rendering the final decision."), *cert. denied*, 137 S. Ct. 625 (2017).

Droplets raises these arguments solely to preserve them for further review, and provides no compelling

reason why this panel can or should revisit those decisions. Accordingly, we need not address them further.

## III. E*TRADE'S CROSS-APPEAL

E*TRADE cross-appeals from the Board's final written decision, arguing that "an alternative ground exists to determine that '115 Patent claims 2-6, 8, 13-17, 19, and 24 are invalid." Cross-Appellant Br. 50-51. Specifically, E*TRADE submits that, if we reverse the Board's decision invalidating the '115 Patent due to its priority claim statement, we should find that the Board erred in its obviousness analysis when it: (1) improperly narrowed the scope of the '115 Patent claims; and (2) failed to consider the full scope of the Ferris prior art reference. *Id.* at 51. According to E*TRADE, correcting these errors would result in "13 of the 25 claims of the '115 Patent being found obvious over that prior art, and 3 of [the] 25 claims being remanded for further consideration." *Id.* at 10.

Because we agree with the Board's analysis of the priority issue, we need not address the merits of E*TRADE's arguments. In any event, as explained below, E*TRADE's cross-appeal is improper.

Both Droplets and E*TRADE seem to suggest that we have jurisdiction over E*TRADE's cross-appeal pursuant to 35 U.S.C. § 141(c). Section 141(c) provides that:

> A party to an inter partes review or a post-grant review who is dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 318(a) or 328(a) (as the case may be) may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit.

35 U.S.C. § 141(c) (2012). The parties suggest that, because the statute uses the phrase "dissatisfied with the final written *decision*"—not just the outcome—Droplets can challenge on cross-appeal the Board's alternative invalidity findings. We disagree.

As we recently explained, there is no support for the proposition that "Congress intended the use of 'dissatisfied with' in conjunction with 'final decision' to broaden the appeal rights from Board decisions to include those of prevailing parties who are merely dissatisfied with the Board's reasoning." *SkyHawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373, 1377 (Fed. Cir. 2016) (involving an appeal from inter partes reexamination under pre-AIA § 141). This is consistent with the well-established rule that, as an appellate tribunal, we review judgments, not opinions. *See Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed. Cir. 1983) ("We sit to review judgments, not opinions.").

Here, E*TRADE is not dissatisfied with the Board's final judgment of invalidity based on the priority date issue, only with its alternative finding that some of the claims were nonobvious over a different prior art reference. *See* Oral Arg. at 25:15-22, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 16-2504.mp3 ("Certainly we are satisfied with the ultimate outcome, but we disagree with one of the bases."). Indeed, counsel for E*TRADE conceded at oral argument that, if Droplets had not appealed the Board's decision, E*TRADE would have no grounds to appeal. Oral Arg. at 25:41-55.

"It is only necessary and appropriate to file a cross-appeal when a party seeks to enlarge its own rights under the judgment or to lessen the rights of its adversary under the judgment." *Bailey v. Dart Container Corp. of Mich.*, 292 F.3d 1360, 1362 (Fed. Cir. 2002). As such, we have said that a cross-appeal is only proper when acceptance of the argument advanced "would result in a reversal or modification of the judgment rather than an affirmance." *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004) (quoting *Bailey*, 292 F.3d at 1362). Where, as here, the Board has entered a judgment

of invalidity as to all claims, there is no basis for a cross-appeal as to additional grounds for invalidity. *See id.*

Because E\*TRADE is neither "dissatisfied with" nor adversely affected by the appealed judgment, we dismiss its cross-appeal as improper. E\*TRADE was, however, permitted to raise the arguments in its cross-appeal as alternative grounds for affirming the Board's judgment. But because we affirm the Board's decision finding all claims of the '115 Patent invalid, we need not address E\*TRADE's alternative arguments.

## IV. CONCLUSION

For the foregoing reasons, we conclude that a patent must contain a specific reference to each prior-filed application to be entitled to those applications' earlier filing dates. Incorporation by reference cannot satisfy this statutorily mandated specific reference requirement. Because the '115 Patent contains a specific reference only to the '838 Patent, and not the earlier-filed '745 Patent or '917 Provisional, we affirm the Board's decision finding all claims of the '115 Patent invalid as obvious. We dismiss E\*TRADE's cross-appeal as improper.

**AFFIRMED;**
**CROSS-APPEAL DISMISSED**

COSTS

No costs.