# United States Court of Appeals for the Federal Circuit

---

**NATURAL ALTERNATIVES INTERNATIONAL, INC.,**
*Appellant*

**v.**

**ANDREI IANCU, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2017-1962

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 95/002,001.

---

Decided: October 1, 2018

---

SCOTT A. M. CHAMBERS, Porzio, Bromberg & Newman, PC, Washington, DC, argued for appellant. Also represented by RICHARD J. OPARIL, KEVIN M. BELL, BILLY DELL CHISM; MATTHEW ZAPADKA, Bass, Berry & Sims, PLC, Washington, DC.

MARY L. KELLY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for

intervenor.    Also represented by THOMAS W. KRAUSE, ROBERT J. MCMANUS, AMY J. NELSON.

———————————

Before PROST, *Chief Judge,* MOORE and REYNA,
*Circuit Judges.*

PROST, *Chief Judge.*

Woodbolt Distributors, LLC ("Woodbolt") requested that the United States Patent and Trademark Office ("PTO") reexamine U.S. Patent No. 8,067,381 ("the '381 patent") owned by Natural Alternatives International, Inc. ("NAI").   The PTO ordered *inter partes* reexamination, and the examiner rejected the challenged claims as anticipated by or obvious over cited prior art, including a parent of the reexamined patent.  NAI appeals the Patent Trial and Appeal Board's ("Board") final determination affirming the examiner's rejections and its subsequent denial of NAI's request for rehearing.  Woodbolt is not a party to this appeal.  The Director of the PTO has intervened to defend the Board's decision.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).  We affirm.

## BACKGROUND

Between 1997 and 2011, NAI filed a chain of eight U.S. patent applications generally directed to increasing athletes' endurance.  The eighth application matured into the '381 patent, the subject of this appeal.  NAI filed the first application in the chain on August 12, 1997, and within five years, it had filed three more.  In each such continuing application, NAI included a priority benefit statement under 35 U.S.C. § 120 claiming priority back to the filing date of the first U.S. application, which eventually issued on October 12, 1999, as U.S. Patent No.

5,965,596 ("the '596 patent").[1] NAI also filed a provisional application ("the 2003 provisional application") on April 10, 2003, while the fourth application was still pending before the PTO. Before the fourth application issued on January 20, 2004, NAI filed the fifth application, a continuation-in-part, on November 18, 2003. The fifth application claimed priority to the fourth through first applications and to the 2003 provisional application. Intervenor's Br. 4–5. NAI filed its sixth application on August 29, 2008, during the fifth application's pendency. At that time, the sixth application correctly claimed priority to the fifth application, and the fifth application correctly claimed priority to the fourth application, and so on.

I

On September 2, 2008, just four days after filing its sixth application, NAI amended the "Cross Reference of Related Applications" section of the fifth application to delete the benefit claim to the fourth through the first applications and to claim priority under 35 U.S.C. § 119(e) to only the 2003 provisional application. J.A. 8035; *see* 35 U.S.C. § 119(e) (governing claiming priority to an earlier-filed provisional application). Thus, when the fifth application issued as U.S. Patent No. 7,504,376 ("the '376 patent") on March 17, 2009, it claimed the benefit of only the 2003 provisional application's filing date. The sixth through the eighth applications subsequently issued as patents, but with a statement seeking the benefit of the

---

[1]     Each U.S. application in the chain also included a priority benefit statement under 35 U.S.C. § 119(a), claiming priority back to the filing date of a British patent application that NAI filed in 1996 ("the 1996 British application"). The validity of that priority claim is not before us today, so we do not discuss it.

fifth through the first applications, in addition to the 2003 provisional application.  The '381 patent on appeal here issued from the eighth application on November 29, 2011.

## II

District court litigation involving the '381 patent commenced between NAI and Woodbolt in December 2011.[2]  In May 2012, during that proceeding, Woodbolt sought *inter partes* reexamination of the asserted patent claims.[3]  The request alleged that "the asserted claim to priority of the '381 Patent is defective" because the "applicants deliberately and expressly terminated their claim to the priority of the first four applications[,]" which thus "broke[] the chain of priority between the Fourth and Fifth Applications."  J.A. 45–46.  During reexamination, NAI did not dispute that it had waived priority to the fourth through the first applications in its fifth application.  J.A. 971.  But it insisted that the sixth application maintained priority back to the first application because NAI did not amend the "Cross Reference of Related Applications" in the sixth application.  According to NAI, it was irrelevant what happened to the fifth application once the sixth application became entitled to the first application's filing date.  J.A. 975.  Unpersuaded, the examiner finally rejected the reexamined claims in view of prior art including the '596 patent (i.e., the patent that issued from the

---

[2]    Woodbolt and NAI have since settled their lawsuit concerning the '381 patent.  *See* Appellant's Br. 1.

[3]    Under the Leahy-Smith America Invents Act, *inter partes* review replaced *inter partes* reexamination as the avenue for third-party patentability challenges in the PTO.  *See* Pub. L. No. 112–29, § 6(a), 125 Stat. 284, 299–304 (2011).

first application), and then closed prosecution.[4]  J.A. 1210, 1226.

NAI appealed the examiner's decision to the Board. The Board determined that when NAI filed the eighth application, "[t]he fifth application [was] not entitled to the benefit of the fourth application since the specific reference to the fourth application was deleted in the fifth." J.A. 13.  Because the eighth application claimed priority to the first application via the fifth application, the Board determined that the eighth application (and thus the '381 patent) was also not entitled to the benefit of the fourth through the first applications. *See* J.A. 16. The Board issued a final written determination affirming the examiner's rejections and denied NAI's request for rehearing.

DISCUSSION

NAI challenges the Board's priority determination.[5] According to NAI, the Board erred by denying the '381 patent priority back to the first U.S. application in the priority chain under § 120.  Appellant's Br. 2–3.

I

Entitlement to priority under § 120 is a legal determination based on underlying fact findings.  *See In re Owens*, 710 F.3d 1362, 1366 (Fed. Cir. 2013).  When the underlying facts are undisputed, priority date determination is purely a legal question.  *Medtronic CoreValve v. Edwards Lifesciences Corp.*, 741 F.3d 1359, 1363 (Fed.

---

[4]    The eighth application is a "Continuation of a Continuation of the Sixth Application/Patent[.]"    *See* Appellant's Br. 26–27; Intervenor's Br. 3–5.

[5]    NAI's challenge to the Board's finding of anticipation relies entirely on the priority date issue.  *See* Appellant's Br. 3 n.2, 46–47.

Cir. 2014). Because this appeal presents no disputed factual issues relevant to the Board's priority determination, we review the Board's legal conclusions de novo. *See Stevens v. Tamai*, 366 F.3d 1325, 1330 (Fed. Cir. 2004).

## II

NAI argues that the Board erred by denying the '381 patent priority back to the first U.S. application in the priority chain. *See* Appellant's Br. 46–47. Its argument proceeds in four parts. First, NAI contends that priority to the first application "vested" with the sixth application once the sixth application met all the criteria of § 120. *See id.* at 31–34. Second, NAI claims that this is so—even though an intervening application waived priority to the first application—because a waiver of priority is limited to the instant application and does not extend to subsequent applications. *Id.* at 35–36. Third, in NAI's view, the Board reached a contrary determination because the Board erroneously viewed priority as a single growing chain rather than multiple fixed chains. Appellant's Br. 34, 38. Fourth, such a view, according to NAI, "limits an applicant's ability to seek protection" when "amending [a] priority claim to gain [patent] term." *Id.* at 38. We address each part of NAI's argument in turn.

## A

NAI first argues that the Board erred in its determination that "priority does not 'vest.'" *Id.* at 33. According to NAI, "[p]riority properly vested by virtue of meeting all the requirements of § 120." *Id.* at 34. NAI asserts that *Loughlin v. Ling* dictates this conclusion because it states that "[p]rovided the criteria in § 120 are met, applications 'shall,' without exception, receive the benefit of the earlier filing date." 684 F.3d 1289, 1293 (Fed. Cir. 2012); *see* Appellant's Br. 31. The Board considered this argument and found it unpersuasive. *See* J.A. 12.

Section 120 of title 35 sets forth requirements for a U.S. patent application to claim priority based on an earlier-filed nonprovisional application. *See Medtronic CoreValve*, 741 F.3d at 1363. When NAI filed the application that became the '381 patent, § 120 provided the following:

> An application for patent for an invention [1] disclosed in the manner provided by section 112(a) . . . [2] filed by an inventor or inventors named in the previously filed application *shall* have the same effect, as to such invention, as though filed on the date of the prior application, [3] if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly *entitled* to the benefit of the filing date of the first application and [4] if it contains or is amended to contain a specific reference to the earlier filed application. No application shall be entitled to the benefit of an earlier filed application under this section unless an amendment containing the specific reference to the earlier filed application is submitted at such time during the pendency of the application as required by the Director. The Director may consider the failure to submit such an amendment within that time period as a waiver of any benefit under this section.

35 U.S.C. § 120 (2000) (emphases and numbering added). "Specific reference," in the context of § 120, means that the application seeking the benefit must state (or be amended to state) that it claims the benefit of the earlier-filed application's filing date, identifying each earlier-filed application by number and explaining how the applications are related to one another. *Droplets, Inc. v. E*TRADE Bank*, 887 F.3d 1309, 1315–16 (Fed. Cir. 2018).

NAI's "vesting" argument conflates properly claiming priority and demonstrating entitlement to priority. Patent claims "are not entitled to an earlier priority date merely because the patentee claims priority." *In re NTP, Inc.*, 654 F.3d 1268, 1276 (Fed. Cir. 2011). Rather, "for a patent's claims to be entitled to an earlier priority date, the patentee must *demonstrate* that the claims meet the requirements of 35 U.S.C. § 120." *Id.* (emphasis added). Accordingly, claims in a patent or patent application are not entitled to priority under § 120 at least until the patent owner *proves* entitlement to the PTO, the Board, or a federal court. *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305–06 (Fed. Cir. 2008) (explaining that "when neither the PTO nor the Board has previously considered priority, there is simply no reason to presume that claims in a [continuation-in-part] application are entitled to the effective filing date of an earlier filed application," so the district court may place the burden on the patent owner to "come forward with evidence to prove entitlement to claim priority to an earlier filing date"); *see also In re NTP, Inc.*, 654 F.3d at 1277 ("[W]hen a patentee argues that its claims are entitled to the priority date of an earlier filed application, the examiner must undertake a priority analysis to determine if the patentee meets the requirements of § 120."); Manual of Patent Examining Procedure ("MPEP") § 201.08 (providing that "[t]he [PTO] does not need to make a determination as to whether the [35 U.S.C. § 112(a)] requirement of 35 U.S.C. [§] 120" is met "unless the filing date of the earlier nonprovisional application is relied upon in a proceeding before the [PTO]").

Furthermore, examiners and adjudicators cannot be expected to scrutinize the prosecution history of an application and each parent application to determine whether the application would have met § 120's requirements at any point during its pendency. *See, e.g., Droplets,* 887

F.3d at 1317 (explaining that "it would be improper to place the burden on the public to unearth and decipher a priority claim when the 'patentee is the person best suited to understand the genealogy and relationship of her applications,' and a 'requirement for her to clearly disclose this information should present no hardship'"); *see also Medtronic CoreValve*, 741 F.3d at 1366 ("Congress may well have thought that Section 120 was necessary to eliminate the burden on the public to engage in long and expensive search of previous applications in order to determine the filing date of a later patent." (quoting *Sticker Indus. Supply Corp. v. Blaw-Knox Co.*, 405 F.2d 90, 93 (7th Cir. 1968))).

*In re Janssen Biotech, Inc.* is instructive here. 880 F.3d 1315 (Fed. Cir. 2018). In *In re Janssen Biotech*, the patentee attempted during reexamination to amend its patent to delete a benefit claim to a parent application, among other proposed amendments. *Id.* at 1320. We noted that even though the patentee "had never received issued claims . . . on the subject matter originating from the [parent] application, more than thirty-two issued patents 'reached through the [reexamined] patent for benefit of a prior filing date' and 'the patentability of those claims . . . cannot be determined without reopening examination of those patents in view of the deletion of the subject matter in the [reexamined] patent." *Id.*; *see id.* at 1323; *see also Searle LLC v. Lupin Pharm., Inc.*, 790 F.3d 1349, 1355 (Fed. Cir. 2015) (observing that if a patent owner had obtained foreign patent protection based on a Patent Cooperation Treaty ("PCT") application, altering the scope of the PCT application could call into question the proper scope of those foreign patents). In short, we have previously acknowledged that amending an earlier-filed parent application may affect the priority of its child applications.

And we do so again here.  The Board determined that when filed, the eighth application did not meet the "specific reference" requirement of § 120 as to the filing date of the first application.  J.A. 11–12.  That was so, according to the Board, because the eighth application claimed the benefit of the first application's filing date by way of the fifth application, and NAI had amended the fifth application to claim priority to only the 2003 provisional application.  *See id.*  In other words, because the fifth application lacked priority to the first application, the eighth application's priority claim to the first application (via the fifth application) did not satisfy all of § 120's requirements.  The Board, therefore, did not err in determining that the '381 patent was not entitled to claim the benefit of the filing date of the first application under § 120, as the priority claim in the '381 patent was defective from the start.

## B

Next, NAI avers that although "a claimed benefit to an earlier filing date may later be altered in the instant application according to MPEP § 201.11, . . . that alteration applies only to the instant application—not other, . . . applications."[6]    Appellant's Reply Br.    15.  According to the MPEP, which is "commonly relied upon as a guide to patent attorneys and patent examiners on procedural matters," *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1439 (Fed. Cir. 1984), "[a] cancellation of a benefit claim to a prior application may be considered as a showing that the applicant is intentionally waiving the benefit claim to the prior application in the *instant appli-*

---

[6]    Although outdated, we refer to MPEP § 201.11 to remain consistent with Appellant's briefs.  *See, e.g.*, Appellant's Reply Br. 7.  The subject matter of § 201.11, however, now exists in MPEP § 211.

*cation,*" MPEP § 201.11(III)(G) (8th ed., Rev. 1) (2003) (emphasis added); MPEP § 211.02(a)(III) (9th ed., Rev. 7) (2015) (same).

Although the Board did not explicitly address this argument, the PTO responds that NAI reads MPEP § 201.11 "too narrowly." Intervenor's Br. 34–35. Specifically, the PTO notes that "the [MPEP] passage does not state that cancellation of a benefit claim may be considered a waiver in *only* the instant application." *Id.* at 35. The PTO, applying this broader interpretation, asserts that "the intentional cancellation of a benefit claim pursuant to MPEP § 201.11 can similarly affect another application's entitlement to a benefit claim." *Id.* We agree with the PTO.

As an initial matter, we note that the MPEP "does not have the force of law[,]" *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 n.10 (Fed. Cir. 1995), and does not bind us, *Litton Sys.*, 728 F.2d at 1439. Nonetheless, we have reviewed MPEP § 201.11 and find that nothing in its text limits the scope of waiver to *only* the instant application. Indeed, § 201.11 does not contemplate all possible consequences of waiving a benefit claim in a particular application. Moreover, at least in the context of terminal disclaimers, the MPEP has *explicitly* indicated when a disclaimer applies only to the instant application and not to downstream applications. *See, e.g.*, *Hagenbuch v. Sonrai Sys.*, 2015 U.S. Dist. LEXIS 39083, *10–13 (N.D. Ill. Mar. 27, 2015) (explaining that "[t]he MPEP in effect in 1993 described the effect of a disclaimer that, by its terms, applied only to the 'instant application'"); *see also* MPEP § 1490(VI)(B) (9th ed., Rev. 8) (2017) ("A terminal disclaimer filed to obviate a nonstatutory double patenting rejection is effective only with respect to the application or patent identified in the disclaimer unless by its terms it extends to continuing applications . . . .").

C

Further, NAI summarily concludes that "[r]ather than the dogmatic view of seeing additional continuation filings merely adding an additional link in a single growing chain, § 120, and the case law, must be interpreted as providing for a new priority chain being created at each new filing." Appellant's Br. 34.

NAI, however, neither explains why § 120 compels this interpretation of priority claims nor provides any case law to support its conclusion. Nor does NAI provide any argument to undermine the long-standing interpretation of priority as a single chain, growing with each additional continuation. The Supreme Court has previously explained that under § 120, parent and continuing applications "are to be considered as parts of the same transaction, and both as constituting one continuous application, within the meaning of the law." *Godfrey v. Eames*, 68 U.S. 317, 326 (1863); *see also Sticker Indus.*, 405 F.2d at 93 (stating that "each application in a long chain grows out of the one immediately preceding it"). We therefore decline to adopt NAI's interpretation of chain of priority.

D

Finally, NAI argues that the Board's determination impermissibly "limits an applicant's ability to seek protection" when "amending the priority claim to gain [patent] term." *See* Appellant's Br. 38. NAI's argument suggests that NAI need not trade the benefit of an earlier filing date in order to gain patent term. *See id.* at 36 (arguing that by waiving priority in the parent application, it was not waiving priority in the child application). Although the Board did not explicitly address this argument, the PTO asserts that because NAI "chose to delete the benefit claim in its fifth U.S. application and thereby obtained a longer term for the patent issuing therefrom[,]" a "consequence of this voluntary action is that [NAI's] sixth

through eighth U.S. applications would no longer be entitled to the benefit of the filing date of its fourth through first U.S. applications." Intervenor's Br. 14. Again, we agree with the PTO.

Continuation-in-part ("CIP") applications, like the fifth application in this case, uniquely highlight the trade-off between priority and patent term.[7] In CIP applications, priority is assessed on a claim-by-claim basis. *Transco Prods., Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 557 n.6 (Fed. Cir. 1994). An applicant can obtain an earlier effective filing date for claims in a CIP application only if those claims find support in an earlier-filed nonprovisional application. *Id.* Claims reciting new matter, however, are entitled to only the filing date of the CIP application and not to the filing date of the earlier-filed application. *Id.* Because the standard patent term is twenty years after an application's *earliest-claimed* priority date, *see* 35 U.S.C. § 154(a)(2) (emphasis added),[8] the claims reciting new matter are not entitled to the parent application's earlier filing date, and they therefore have a truncated patent term (i.e., less than twenty

---

[7] "A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application . . ., repeating some substantial portion or all of the earlier nonprovisional application and *adding matter not disclosed* in the said earlier nonprovisional application." *Univ. of W. Va. v. Van Voorhies*, 278 F.3d 1288, 1297 (Fed. Cir. 2002).

[8] As of June 8, 1995, *see* Uruguay Round Agreements Act, Pub. L. No. 103–465, § 532, 108 Stat. 4809, 4984 (1994), U.S. applications that claim priority to an earlier-filed U.S. application will have a patent term of twenty years from the filing date of the earliest U.S. application to which it claims a priority benefit. 35 U.S.C. § 154(a)(2).

years).  *See* 5 Donald S. Chisum, Chisum on Patents § 16.04[6][b] (2016).

An uncommon but permissible way for patent applicants to avoid losing term on claims that recite new matter is to disclaim the benefit of earlier filing dates. *See* MPEP §§ 211.02(a)(III).  Thus, by deleting the benefit claim in a CIP application, the twenty-year patent term of the patent issuing from that CIP application would extend from the CIP application's filing date instead of the parent application's earlier filing date. *See id.*  Of course, once the CIP application adopts the later filing date, the CIP application and its children become vulnerable to rejections based on a larger pool of prior art—including former parent applications in some cases.  *See, e.g., Santarus, Inc. v. Par Pharm., Inc.*, 694 F.3d 1344, 1352 (Fed. Cir. 2012) (finding that "[d]ue to breaks in the chain of priority," the "[parent] patent [was] prior art for some of the asserted claims").

Under NAI's theory of priority, however, NAI could gain patent term on its fifth application while simultaneously shielding its child applications (including the eighth application) from their former parents.  For the reasons discussed herein, NAI cannot have it both ways.

## III

We have considered NAI's remaining arguments and find them unpersuasive.  For the foregoing reasons, the Board's final decision invalidating the challenged claims is affirmed.

**AFFIRMED**